1    **WO**

2

3

4

5

6                    **IN THE UNITED STATES DISTRICT COURT**

7                        **FOR THE DISTRICT OF ARIZONA**

8

9    Ty Kirkpatrick,                              No. CV-21-01048-PHX-DJH

10                   Plaintiff,                    **ORDER**

11   v.

12   Timothy Hubman, et al.,

13                   Defendants.

14

15          There are several matters before the Court.  The first to be addressed arises from the

16   Court's prior Order (Doc. 33), which put *pro se* Plaintiff Ty Kirkpatrick on notice that the

17   Court was contemplating dismissing this action as a duplicative proceeding.  The Court

18   issued this Order after learning of a proceeding between the same parties in the Central

19   District of California, *Kirkpatrick v. Hubman, et al.*, 2:20-cv-10161-FWS-SK (the

20   "California Proceeding").[1]  Mr. Kirkpatrick has filed a Response to the Court's Order (Doc.

21   33).

22          Also Pending before the Court are Defendant Timothy Hubman's Motion to Dismiss

23   (Doc. 23) and Mr. Kirkpatrick's two motions for default (Docs. 25; 29).  The Motion to

24   Dismiss is fully briefed, but Defendants have not responded to the Motions for Default.

25   **I.     Factual Background**

26          On June 10, 2020, Mr. Kirkpatrick initiated the California Proceeding and named

27   ---
     [1] The Court will take judicial notice of the proceeding in the Central District of California.
28   *U.S. ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc.*, 971 F.2d 244, 248 (9th
     Cir. 1992) (holding courts may take notice of other court proceedings if they "have a direct
     relation to the matters at issue") (citation omitted).

Mr. Hubman and Mr. Hubman's company, the Coexist Foundation, Inc. ("Coexist"), as Defendants. A year later, on June 16, 2021, Mr. Kirkpatrick initiated this matter (the "Arizona Proceeding"), which named the same Defendants. No party, in either action, is represented by counsel.

Mr. Hubman is a self-described ex "con man," although the Seventh Circuit Court of Appeals found he likely still is one. *Coexist Found., Inc. v. Fehrenbacher*, 865 F.3d 901, 904 (7th Cir. 2017) ("The con man is the plaintiff, and it is doubtful that he is truly reformed.").[2] He used to run an organization called the Hubman Foundation, until a "federal court in Virginia determined that the Hubman Foundation was not a charity but a sham designed to insulate Hubman from his debts and obligations." *Id.* On the day Mr. Hubman dissolved the Hubman Foundation, he became the "president and sole director" of Coexist. *Id.*

Mr. Hubman also used Coexist to solicit supposedly charitable contributions. *Id.* at 905. For example, in 2009, Mr. Hubman met a retired baseball player named Shannon Stewart and persuaded him to lend $2 million to Coexist. *Id.* Mr. Kirkpatrick alleges that he was responsible for their introduction. (Doc. 1 at ¶ 18). The $2 million was characterized as a "conditional donation" because Mr. Hubman promised the money would be returned in a few months. *Coexist Found.*, 865 F.3d at 905. Mr. Hubman, through Coexist, then "invested" the money with an individual named Michael Fehrenbacher, who in turn "invested" the money with an entity called Assured Capital. *Id.* However, Mr. Fehrenbacher soon discovered that Assured Capital "was running a Ponzi scheme." *Id.* Eventually Assured Capital returned some of the money, and Mr. Fehrenbacher gave Coexist $1,494,250. *Id.*

Mr. Stewart then sued Mr. Hubman and obtained a stipulated judgment against Mr. Hubman and Coexist for $2 million, and Coexist then sued Mr. Fehrenbacher and obtained a judgment for $694,271.40, which was affirmed by the Seventh Circuit. *Coexist Found.,*

---

[2] The Court also takes judicial notice of this decision, and the one before the trial court in the Northern District of Illinois, *Coexist Found., Inc. v. Fehrenbacher*, 2016 WL 4091623, at *6 (N.D. Ill. Aug. 2, 2016).

1   *Inc. v. Fehrenbacher*, 2016 WL 4091623, at *3, 6 (N.D. Ill. Aug. 2, 2016), *aff'd*, 865 F.3d
2   901 (7th Cir. 2017).  As of the time of the trial in the later action between Mr. Hubman and
3   Mr. Fehrenbacher, Mr. Hubman had not paid Mr. Stewart any amount of the stipulated
4   judgment.  *Id.* at *6.  Nothing before the Court suggests that the $2 million has made its
5   way back through the string of con men to Mr. Stewart.

6       Mr. Hubman has claimed he abandoned his ways as a con man when he joined a
7   church in 2008.  *Id.* at *1.  Mr. Krikpatrick's allegations in the California Proceeding say
8   otherwise.[3]  As alleged, Mr. Hubman was introduced to Mr. Kirkpatrick in 2008 by a
9   pastor, Ilie Jurca.  Over the course of several years, Mr. Hubman convinced Mr. Jurca to
10  lend him hundreds of thousands of dollars through promissory notes.  Rarely did Mr.
11  Hubman make any payments.  In February 2014, Mr. Hubman told Mr. Jurca that he was
12  about to win a lawsuit that would let him get "his" $2 million back.  Mr. Kirkpatrick alleges
13  that, at that time, he decided to enter into an agreement with Mr. Jurca that assigned all of
14  the promissory notes between Mr. Hubman and Mr. Jurca to Mr. Kirkpatrick and Mr.
15  Kirkpatrick's company, Consulting Direct.  These assignments serve as the basis for Mr.
16  Kirkpatrick's claims of nearly $1 million in damages in the California Proceeding.

17      Here, in the Arizona Proceeding, Mr. Kirkpatrick alleges he entered into a
18  "Consulting Agreement" with Mr. Hubman in 2008 whereby he would find "donors" for
19  Coexist.  (Doc. 1 at ¶¶ 2, 11).  As compensation for this work, Mr. Kirkpatrick "was to
20  receive a $900,000 annual salary until 2028."  (*Id.* at ¶ 11).  In 2008 and 2009, Mr.
21  Kirkpatrick alleges he found people who "donated" a combined $1,750,000 in art or cash
22  to Coexist.  (*Id.* at ¶ 13).  And yet, "[f]or all the donors Kirkpatrick brought in, Kirkpatrick
23  did not receive his $900,000 salary but received" just $10,000 in compensation.  (*Id.* at ¶
24  14).

25      In addition to the donors Mr. Kirkpatrick found in 2009, Mr. Kirkpatrick also claims
26  a woman, with whom he had previously spoken about donating to Coexist, told Mr.
27  Stewart's father about possibly donating.  (*Id.* at ¶¶ 15–16).  Because Mr. Stewart

28  ---
[3] The remaining sentences in this paragraph represents Mr. Kirkpatrick's allegations as
recounted in his First Amended Complaint in the California Proceeding.

eventually donated $2 million to Coexist, Mr. Kirkpatrick argues that he himself was "in fact the procuring cause of this donation." (*Id.* at ¶ 18). When Mr. Kirkpatrick asked Mr. Hubman about how he met Mr. Stewart, Mr. Hubman only said that he "used to play baseball" with him. (*Id.*) Mr. Kirkpatrick represents that he came to understand this was untrue in 2019, after reading the Northern District of Illinois' decision in *Coexist Found., Inc. v. Fehrenbacher*. (*Id.*) And because it was really Mr. Kirkpatrick who procured the "donation," he argues he is entitled to his salary of $900,000 (minus $10,000 that he has already received). (*Id.* at ¶ 26).

## II.     Procedural Background

The Court will briefly discuss this Arizona Proceeding's several procedural oddities. Mr. Kirkpatrick first attempted to serve Mr. Hubman by serving Mr. Hubman's father in Oregon. Mr. Kirkpatrick had noted that the address on Mr. Hubman's driver's license is the address of a Postal Plus Store and that Coexist's address is the location of a UPS store. (Doc. 14 at 4).[4] The Court notes that, at the time Mr. Kirkpatrick was supposed to serve Mr. Hubman, he was actively engaged in the California Proceeding, in which Mr. Hubman had appeared. In any event, the Court ordered Mr. Kirkpatrick to serve both Defendants by serving the Florida Secretary of State. (Doc. 15 at 4). After this service was made, Mr. Hubman appeared and filed his Motion to Dismiss. (Doc. 23).

On March 28, 2022, the Court held a Rule 16 Scheduling Conference, but no party appeared. (Doc. 35). The Court ordered the parties to show cause in writing as to why they failed to appear. Mr. Hubman filed a Response (Doc. 36), but Mr. Kirkpatrick did not. At a show cause hearing, Mr. Kirkpatrick unconvincingly represented to the Court that he "thought" he already had submitted a response. In a subsequent written filing, Kirkpatrick admitted that his "errors and omissions" in failing to obey Court orders are "not acceptable," and, certainly, they are not.

## III.    Duplicative Litigation

The Court will now turn to the question it raised earlier, which is whether the

---

[4] Mr. Kirkpatrick does not explain how he came to have a copy of Mr. Hubman's drivers' license.

Arizona Proceeding is duplicative of the California Proceeding.  (Doc. 32).  "Sua sponte dismissal of an action duplicative of a parallel action already pending in another federal court is allowable as an exercise of wise judicial administration."  *Clayton v. District of Columbia*, 36 F. Supp. 3d 91, 94 n.1 (D.D.C. 2014); *Arellano v. Sedighi*, 2016 WL 4430851, at *2 (S.D. Cal. Aug. 22, 2016) (District Courts possess the power to sua sponte dismiss duplicative claims).  District Courts have the "discretion to dismiss a later-filed action if the causes of action and relief sought, as well as the parties or privies to the action, are the same."  *Indigo Grp. USA, Inc. v. Ralph Lauren Corp.*, 690 F. App'x 945, 946 (9th Cir. 2017) (cleaned up).

The Court recognizes that the events giving rise to both the California Proceeding and this Arizona Proceeding are part of a larger sordid story and that the parties in both actions are the same.  However, the Court cannot find that the actions are duplicative.  The California Proceeding's causes of action arises out of debts owed under the assignments that Mr. Kirkpatrick obtained from Mr. Jurca.  This Arizona Proceeding's causes of action arise out of the Consulting Agreement between Mr. Kirkpatrick and Mr. Hubman.  These matters are distinct enough that they cannot be called duplicative.

**IV.    Motion to Dismiss**

The Court will proceed to address Mr. Hubman's Motion to Dismiss.  A motion to dismiss pursuant to Rule 12(b)(6) tests the legal sufficiency of a claim. *Cook v. Brewer*, 637 F.3d 1002, 1004 (9th Cir. 2011). Complaints must make a short and plain statement showing that the pleader is entitled to relief for its claims. Fed. R. Civ. P. 8(a)(2). This standard does not require "'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). There must be "more than a sheer possibility that a defendant has acted unlawfully." *Id.* While courts do not generally require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *See Twombly*, 550 U.S. at 555. A complaint must "state a claim to relief that is plausible on its face." *Id.*

at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  To determine whether a claim is plausible, courts look to the context of the complaint and draw upon their own "judicial experience and common sense." *Id.* at 679.

Dismissal of a complaint for failure to state a claim can be based on either the "lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).  In reviewing a motion to dismiss, "all factual allegations set forth in the complaint 'are taken as true and construed in the light most favorable to the plaintiffs.'" *Lee v. City of L.A.*, 250 F.3d 668, 679 (9th Cir. 2001) (quoting *Epstein v. Wash. Energy Co.*, 83 F.3d 1136, 1140 (9th Cir. 1996)). But courts are not required "to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).  A defendant may raise a statute of limitations defense in a Rule 12(b)(6) motion, and it will be granted only if the running of the statue is apparent form the complaint's allegations themselves.  *Huynh v. Chase Manhattan Bank*, 465 F.3d 992, 997 (9th Cir. 2006).

Here, Mr. Hubman argues all of Mr. Kirkpatrick claims are time-barred under Florida law and should, therefore, be dismissed.  (Doc. 23).  Mr. Kirkpatrick argues that under the continuing violation doctrine, all of his claims survive.  (Doc. 27 at 1).

### a.  Choice of Law

Mr. Hubman assumes that Florida law applies to this entire action because the Consulting Agreement states that it is governed by Florida law.  (*See* Doc. 1 at 19).  But this assumption is not entirely correct.  As will be explained below, Florida law applies to the Complaint's contract claims, and Arizona law applies to its tort claims.

Because this action arises under the Court's diversity jurisdiction, the Court applies the choice of law rules of the forum state.  *Hatfield v. Halifax PLC*, 564 F.3d 1177, 1182 (9th Cir. 2009).  Here, the Court applies Arizona's choice of law rules.  Arizona separates

1    choice of law determinations for contract claims and tort claims.  *See, e.g., Magellan Real*

2    *Est. Inv. Tr. v. Losch*, 109 F. Supp. 2d 1144, 1155 (D. Ariz. 2000).

3           For contract claims, Arizona courts apply the Restatement to determine the

4    applicable law.  *Swanson v. Image Bank, Inc.*, 77 P.3d 439, 441 (Ariz. 2003).  A contract's

5    choice of law provision is valid and enforceable if the contract issue brought by the parties

6    is "one which the parties could have resolved by an explicit provision in their agreement

7    directed to that issue."  *Id.* at 442 (quoting Restatement (Second) of Conflict of Laws § 187

8    (1971)).  The issue here is whether Mr. Kirkpatrick is entitled to his salary for obtaining

9    "donations" for Coexist.  Mr. Kirkpatrick's compensation is explicitly stated in the

10   Consulting Agreement, as is his salary.  (Doc. 1 at 18) (stating Mr. Kirkpatrick would

11   "arrange donations" in consideration for "$900,000" per year).  Therefore, the Court will

12   apply Florida law to the Complaint's contract claims: breach of contract, breach of duty of

13   good faith and fair dealing, and unjust enrichment.[5]

14          For tort claims, courts apply the law of the state that has "the most significant

15   relationship to both the occurrence and the parties with respect to any particular question."

16   *Bates v. Superior Ct. of State of Ariz.*, 749 P.2d 1367, 1370 (Ariz. 1988).  Courts consider

17   where the injury occurred, where the harm originated, where the parties reside, and where

18   the parties' relationship might be centered. *Id.* (citing Restatement (Second) of Conflict of

19   Laws § 145 (1971)).  Mr. Kirkpatrick alleges that a "substantial part of the events" giving

20   rise to his claims arose in Arizona, and he alleges he was living in Arizona when he entered

21   into the Consulting Agreement.  (Doc. 1 at ¶ 3).  At this motion to dismiss phase, the Court

22   will take these allegations as true.  *See Lee*, 250 F.3d at 679.  Therefore, the Court will

23   apply Arizona law to the Complaint's tort claims, which include fraud and constructive

24   fraud.

25          **b.  Contract Claims**

26          Under Florida law, all "legal or equitable" actions arising from a written contract

27

28   _____

[5] Unjust enrichment claims are contract, not tort, claims.  *See Synergy Logistics Co. LLC v. Singh*, 2021 WL 1625516, at *7 (Ariz. Ct. App. Apr. 27, 2021), review denied (Apr. 5, 2022).

have a five-year statute of limitations. Fla. Stat. § 95.11 (2018).  For legal or equitable actions arising out of unwritten contracts, there is a four-year statute of limitations.  *Id.* Generally, the time for breach of contract claims begins to run when there is a breach.  *State Farm Mut. Auto. Ins. Co. v. Lee*, 678 So. 2d 818, 821 (Fla. 1996).  This is true even when damages occur later, after the breach.  *Schmidt v. Sabow*, 331 So. 3d 781, 787 (Fla. Dist. Ct. App. 2021).  For unjust enrichment claims, the time begins to run "at the time the alleged benefit is conferred and received by the defendant."  *Flatirons Bank v. Alan W. Steinberg Ltd. P'ship*, 233 So. 3d 1207, 1213 (Fla. Dist. Ct. App. 2017).

Here, the written Consulting Agreement was breached in 2008 and 2009, when Mr. Hubman failed to pay Mr. Kirkpatrick his entire salary.  (Doc. 1 at ¶ 14).  Mr. Hubman is also alleged to have received the benefit of the $2 million in 2009.  Therefore, because this Arizona Proceeding was initiated in 2021, the Florida's statute of limitations bars the Complaint's claims for breach of contract, breach of implied contract of good faith and fair dealing, and unjust enrichment.

Mr. Kirkpatrick argues that because the Consulting Agreement provides for a yearly salary for every year until 2028, Defendants are technically still in breach for not having paid him in the intervening years and, therefore, his claims are timely.  (Doc. 27 at 2).  For support, Mr. Kirkpatrick invokes the "general proposition of contract law that in the case of contract obligations payable by installment, the statute of limitations does not begin to run against each installment until the day it becomes due."  *H & B Builders, Inc. v. City of Sunrise*, 727 So. 2d 1068, 1071 (Fla. Dist. Ct. App. 1999).  This may be so, but the specific breach that Mr. Kirkpatrick bases his claims upon—non-payment for 2009—would have started to run on the day such payment was due.  This day was, as Mr. Kirkpatrick says, "the first banking day of" the year.  (Doc. 27 at 2).  Because payment of Mr. Kirkpatrick's 2009 salary was due over five years ago, the contract claims Mr. Kirkpatrick now brings are barred by Florida's statute of limitations.  It is not the case, as Mr. Kirkpatrick implies, that all claims for breach of an installment payment are timely so long as some installments are due within the statute of limitations.  Instead, each individual installment has its own

- 8 -

1   expiration date.  Put another way, "the statute of limitations starts running against *each*

2   payment as it becomes due . . . ."  *Isaacs v. Deutsch*, 80 So. 2d 657, 660 (Fla. 1955)

3   (emphasis added).

4         **c.  Tort Claims**

5         The Court turns to whether the tort claims for fraud are barred by the statute of

6   limitations.  Under Arizona law, fraud claims must be brought within three-years of "when

7   the defrauded party discovers or with reasonable diligence could have discovered the

8   fraud."  *Mister Donut of Am., Inc. v. Harris*, 723 P.2d 670, 672 (Ariz. 1986).  Here, Mr.

9   Kirkpatrick alleges that in January 2019, he became aware that it was really him who

10  brought in the $2 million after reading the Northern District of Illinois' 2016 decision.  He

11  argues that Mr. Hubman's false statements regarding who was responsible for this donation

12  constitute fraud.

13        It is very likely that Mr. Kirkpatrick should have reasonably discovered that fraud

14  was afoot simply because of the nature of the parties' 2008 Consulting Agreement—a

15  broken promise for $900,000 a year in exchange for acquiring donations that would be

16  used for "charitable" purposes.  (Doc. 1 at ¶ 12, 19).  Mr. Kirkpatrick, however, makes the

17  dubious allegation that he had no idea Mr. Hubman had defrauded him until January 2019.

18        The Court could accept that these fraud claims are timely.  *See Doe v. Roe*, 955 P.2d

19  951, 961 (Ariz. 1998) ("When discovery occurs and a cause of action accrues are usually

20  and necessarily questions of fact for the jury.").  Nevertheless, the Court will still dismiss

21  Mr. Kirkpatrick's fraud claims, not because they are time-barred, but because they "cannot

22  possibly win relief."  *Omar v. Sea-Land Serv., Inc.*, 813 F.2d 986, 991 (9th Cir. 1987).

23        To state a claim for fraud, Mr. Kirkpatrick must show "(1) a representation; (2) its

24  falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth;

25  (5) the speaker's intent that it be acted upon by the recipient in the manner reasonably

26  contemplated; (6) the hearer's ignorance of its falsity; (7) the hearer's reliance on its truth;

27  (8) the right to rely on it; (9) his consequent and proximate injury."  *Echols v. Beauty Built*

28  *Homes, Inc.*, 647 P.2d 629, 631 (Ariz. 1982).  A claim for constructive fraud does not

require a showing of intent, but it adds the requirement that the speaker must have a confidential relationship to the hearer. *Dawson v. Withycombe*, 163 P.3d 1034, 1057 (Ariz. Ct. App. 2007).

Mr. Kirkpatrick cannot possibly win relief on his fraud claims because his injury is entirely unrelated to the question of whether he believed he was responsible for Mr. Stewart's donation. As alleged, Mr. Kirkpatrick's injury is the non-payment of his salary under the Consulting Agreement for 2009. In his Complaint, Mr. Kirkpatrick crafts his fraud claims as if his salary were contingent upon the fact that he brought in the $2 million Stewart donation. But the Consulting Agreement does not make Mr. Kirkpatrick's salary contingent upon the receipt of donations. (Doc. 1 at 18). All Mr. Kirkpatrick is required to do is "[c]ontact potential donors and arrange donations." (*Id.*) Even if his salary were contingent upon the receipt of donations, the Complaint already alleges that Mr. Kirkpatrick obtained $650,000 for Coexist in 2009. (*Id.* at ¶ 13). Therefore, by the Complaints own allegations, Mr. Kirkpatrick was entitled to his $900,000 salary regardless of whether he was the "procuring cause" of Mr. Stewart's $2 million. Put differently, it was not Mr. Kirkpatrick's *reliance* on Mr. Hubman's representation that *caused* him to lose his salary. These fraud claims are really just poorly disguised contract claims seeking compensation for a breach that occurred over a decade ago.

In sum, the Court will dismiss all of the claims in Mr. Kirkpatrick's Complaint for being time-barred or for failing to state a plausible claim.

**V.    Leave to Amend**

Mr. Kirkpatrick may wish to file an amended complaint. Courts are instructed to "freely give leave" to file an amended complaint "when justice so requires." Fed. R. Civ. P. 15(a)(2). Here, the Court is strongly inclined to deny leave because everything in this case points towards mischief. *See Iqbal*, 556 U.S. at 679 (stating that courts use judicial experience and common sense to determine whether a claim is plausible). Principally, the Court finds it odd that not only is Mr. Kirkpatrick claiming responsibility for the transfer of $2 million to a self-proclaimed con man, but also that he is seeking compensation for

this deed in the amount of nearly $900,000. Looking beyond the fact that this salary is an outrageous amount for a purported charity to pay a fundraiser (and merely for the attempt at finding donations), it is strange that Mr. Kirkpatrick would not have already brought an action against Mr. Hubman for what amounts to millions of dollars owed under the Consulting Agreement. Stranger yet is that Mr. Kirkpatrick, a seemingly sophisticated individual involved in million-dollar transactions, would proceed unrepresented by counsel. The Court is loath to permit the parties' use of the federal courts in furtherance of such mischief.

If Mr. Kirkpatrick wishes to file an amended complaint, he must first file a motion for leave to file an amended complaint that (1) addresses the Complaint's deficiencies and (2) convinces the Court that justice requires he be allowed to file another complaint.

**VI.     Motions for Default**

Finally, Mr. Kirkpatrick has two pending motions for default, which the Court denies as moot. Entry of default may be set aside for good cause. Fed. R. Civ. P. 55(c). That Mr. Kirkpatrick's Complaint fails to state a claim would constitute good cause, and so the Court finds it is unnecessary to enter default against the Defendants.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant Timothy Hubman's Motion to Dismiss (Doc. 23) is **granted**. The Court will dismiss Plaintiff Ty Kirkpatrick's Complaint.

**IT IS FURTHER ORDERED** that Plaintiff Ty Kirkpatrick may file a motion for leave to file a first amended complaint no later than thirty (30) days after this Order's entry. Any motion must explain why the amended complaint resolves the issues identified in this Order, and it must contain a copy of the proposed first amended complaint.

**IT IS FURTHER ORDERED** that if Plaintiff Ty Kirkpatrick fails to file a motion for leave to file a first amended complaint within thirty (30) days of this Order's entry, the Clerk of Court shall terminate this matter without further Order of the Court.

…

**IT IS FINALLY ORDERED** that Plaintiff Ty Kirkpatrick's Motions for Default (Docs. 25; 29) are **denied** as moot.

Dated this 6th day of May, 2022.

Honorable Diane J. Humetewa
United States District Judge